Van Brunt, P. J.
In the foregoing statement it has not been thought necessary to state all the facts’ contained in the voluminous record before us, but simply such as will illustrate the exceptions which have been argued.
The claims of the defendants rest upon the right to set-off and the right to rescind upon the ground of fraud.
That the defendants have no right of set-off, the note upon which they claim their right of set-off not being one at the time of the assignment, seems to be established by several cases in the court of appeals directly in point. Beck- *516 with v. The Union Bank, 9 N. Y., 211; Martin v. Kunzmuller, 37 id., 396; Jordan, admr., v. The National Shoe and Leather Bank, 74 id., 467. And therefore it is not necessary to discuss the proposition.
The questions of law raised by the exceptions taken to evidence and the exceptions to the refusal to charge of the learned judge relating to the defense of fraud, raise more serious difficulties.
The question which was to be submitted to the jury upon this branch of the case was, whether or not Lamborn & Gray had reason to believe, and did believe, at the time they procured this discount from the defendants, that they would be able to meet their obligations at maturity. If they did so believe, and had reasonable ground for such belief, then no fraud was perpetrated, but if they had no reasonable ground for such belief, or did not so believe, then they had no right to procure additional credit.
This issue is necessarily one of intent, to be ascertained by an inquiry into the condition of the" debtor, his hopes and expectations, and the basis of such hopes and expectations, and therefore all evidence tending to throw light upon these subjects is relevant in order to enable the jury to judge, placing themselves as nearly as possible in the debtor’s shoes, surrounding themselves by the circumstances which surrounded the debtor, as to what the intent of the debtor was.
Applying this rule to the exclusion of the letter of December 5, 1883, the ruling would seem to have been error.
It is true that the letter did not prove as a fact anything stated in it, but it was a letter from the Bank of the Re-
Íublic, written by one of its executive officers, informing jambom & Gray of the position taken by the bank in respect to their relations, and a notice that no further advances would be made by the bank to them.
In view of the previous relations of the bank to them, this letter was of great importance to Lamborn & Gray. Mr. Gray knew that the October railway drafts were not paid, and that the November railway drafts were not paid, amounting in all to the sum of $65,000, and this letter was notice that they need expect no accommodation from the bank.
The ruling rejecting this letter is sought to be upheld upon the ground that no proper foundation was laid for making the letter evidence. If this objection had been made at the trial it could"^easily have been remedied, as the record shows that the witnesses were in court who could have given the requisite testimony.
The only objection appearing upon the record was a *517 general one, bringing up only the question of the materiality of the letter.
This ruling is sought to be sustained upon the ground that the letter contained numerous statements which required independent proof to establish, and also numerous statements which were wholly incompetent - and were entirely improper to be submitted to a jury.
It is undoubtedly true that the Bank of the Republic could not make, evidence in their own behalf in this way, but in coming to a conclusion as to the belief and the grounds thereof of Lamborn & Gray, the position of the Bank of the Republic, whether well taken or not, was an important element and could not be disregarded. Neither does the suggestion that, as far as the material parts of the letter are concerned, they were proved by Mr. Ford’s evidence, remedy the difficulty, because the manner in which the requests of the previous letter were rejected in the letter excluded is very different from the testimony given by Mr. Ford.
But there is a more important error which pervaded the charge of the learned court, and some of the requests to charge upon the part of the plaintiffs, and which were charged by the learned court and excepted to by the defendants.
The learned court charged the jury that the question was whether Lamborn & Gray, at the time of applying for this discount, had reasonable cause to believe that they were a solvent firm, or whether they knew themselves to be insolvent; and again, whether, on December 10, 1883, they had good reason and proper cause to suppose * * * , that money would be forthcoming to protect these drafts.
It is true that these charges were not excepted to, and if ' they stood alone the defendants could not have availed themselves of the fact that what Lamborn & Gray actually believed in reference to these matters was not submitted to the jury.
That the question which the jury was to pass upon was as to what Lamborn & Gray had reasonable cause to believe was accentuated by the twenty-fourth request of the plaintiffs, and which was charged and excepted to.
This request was as follows: “ If Lamborn & Gray either believed, or had reasonable cause to believe, that the drafts accepted by the Cleveland, Youngstown & Pittsburg Railroad Company, or its officers, for moneys paid by Lamborn & Gray for work and materials used in the construction of that road, were either paid, or were put to their credit in the Bank of the Republic, or would soon be paid or so put to their credit, that they were guilty of fraud or conceal *518 ment, either actual or constructive, in accepting the discount of the Alliance Bagging Company’s note by defendant.”
_ The form of this request was erroneous, as it was entirely immaterial as to what Lamborn & Gray had reasonable cause to believe in respect to these matters if they did not so believe.
The question was as to their intent. If they believed that they would not be able to continue business, it was a fraud- for them to obtain this credit, but it does not follow that if they believed that they could go on, they were not guilty of fraud, they must show in addition that such belief was founded upon some reasonable ground; that they had reasonable cause so to believe. -
, This request entirely ignores the, necessity that they should have faith in their ability to go on, but instructs the jury that, if they had reasonable cause to believe the facts in the request stated, although they did not in fact believe them, no fraudulent intent could be inferred, which is not á correct statement of the rule of law..
The request also submits to the jury the question as to whether Lamborn & Gray believed, or had reasonable ground to believe, among other things, that the drafts of the railway company were either paid, or were put to their credit in the Bank of the Republic.
The evidence in the case was uncontradicted, that at the time of this discount they .knew that such drafts had not been paid, and had not been put to their credit in the bank, and therefore no such question could be submitted to the jury.
The error crept in because of the earnest endeavor of counsel to get the court to charge that this fact did not constitute a fraud or that fact, or the, other, thus causing the jury to lose sight of the facts of the case as a whole.
We know of no rule which requires the court to charge the jury as to particular facts, or that certain conclusions are to be drawn from isolated facts taken out of the proof, when the other facts of the case may modify materially the effect of the facts sought to be isolated, and this was persistently sought to be done in the case at bar, with the result that in many of the propositions, facts which might, in the opinion of the jury, materially modify those contained in the proposition, were not presented as part of the request.
For the errors above stated, we are of the opinion that the judgment must be reversed and a new trial ordered, with costs to the appellants to abide event.
Daniels, J., concurs; Brady, J., concurs in the result.